## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SIAMAK DOWLATPANAH,

                            **Plaintiff,**

        **v.**                                     **1:05-cv-2752-WSD-RGV**

WELLSTAR HEALTH SYSTEM,
INC.,

                         **Defendant.**

## OPINION AND ORDER

This is an action filed by Plaintiff Siamak Dowlatpanah ("Plaintiff") against Defendant Wellstar Health System, Inc. ("Defendant") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").  It is before the Court on the Magistrate Judge's Report and Recommendation ("R&R") [41] on Defendant's Motion for Summary Judgment ("Def. MSJ") [24].  Plaintiff filed his Objection to the R&R on January 12, 2007.  (Pl. Obj. [43].)  In accordance with 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court has conducted a *de novo* review of the portions of the Magistrate Judge's Report and Recommendation to which Plaintiff has objected.  The Court has reviewed the remainder of the Magistrate Judge's Report and Recommendation for plain error.

United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).  The parties do not object to the Magistrate Judge's findings of fact in the Report and Recommendation and, finding no plain error, the Court adopts the facts set forth in the Report and Recommendation.

I.      **BACKGROUND**

      A.      Procedural History

Plaintiff filed his Complaint on October 24, 2005, alleging that Defendant violated Title VII when Defendant terminated Plaintiff's employment on the basis of his Iranian national origin and in retaliation for a complaint he made about his supervisor.  On July 14, 2006, Defendant filed its Motion for Summary Judgment. After several extensions, on September 13, 2006, Plaintiff filed his response to Defendant's summary judgment motion.

On December 5, 2006, Magistrate Judge Vineyard issued his Report and Recommendation, recommending the Court grant summary judgment for Defendant on Plaintiff's Title VII national origin discrimination claim and his retaliation claim.  On January 12, 2007, Plaintiff filed his Objections to the R&R, and on February 1, 2007, Defendant filed its Response to Plaintiff's Objections.

## II.   DISCUSSION

### A.   The Magistrate Judge's R&R

Defendant moved for summary judgment on Plaintiff's Title VII national origin discrimination claim, arguing that Plaintiff could not establish a *prima facie* case of national origin discrimination because he could not show that a similarly situated employee outside of his class was treated more favorably.  ( Def. MSJ, at 4.)  Defendant argued that even if Plaintiff had a *prima facie* claim for national origin discrimination, the claim fails because Plaintiff cannot show Defendant's reasons for its decision to terminate Plaintiff were pretextual.  Defendant also argued that Plaintiff's retaliation claim is barred because Plaintiff failed to exhaust his administrative remedies by failing to list retaliation in his EEOC charge.  (Def. MSJ, at 6.)  Defendant argued that Plaintiff's retaliation claim also fails on the merits because Plaintiff cannot show a *prima facie* case of retaliation and cannot show that Defendant's reasons for terminating him were pretextual.

The Magistrate Judge concluded that Plaintiff failed to establish a *prima facie* case of discriminatory termination.  The Magistrate held that because Plaintiff failed to identify an employee who was involved in or accused of the same or similar conduct but received more favorable treatment from Defendant, Plaintiff

failed to establish a *prima facie* case of discriminatory termination based on his national origin.  (R&R, at 26.)  The Magistrate held that the Plaintiff's comparator, Rustan Ricks, was not substantially similar to him because Plaintiff's performance problems were far more severe, and, unlike Mr. Ricks, Plaintiff failed to improve after being counseled.

The Magistrate also found that Plaintiff failed to exhaust his administrative remedies with respect to his retaliation claim because his EEOC charge did not complain about retaliation.  (R&R, at 33.)  The Magistrate further held that Plaintiff failed to show a *prima facie* case of retaliation because he could not show a causal connection between his alleged protected activity and his termination.  The Magistrate Judge also found that Plaintiff could not show that Defendant's proffered reasons for his termination were pretextual.  The Magistrate recommended that Defendant's Motion for Summary Judgment be granted on all of Plaintiff's claims.

B.     Plaintiff's Objections

Plaintiff asserts three objections to the Magistrate Judge's R&R.  First, Plaintiff objects to the Magistrate Judge's conclusion that Plaintiff did not demonstrate a *prima facie* case of national origin discrimination because Plaintiff's

-4-

comparator, Mr. Ricks, was not similarly situated to Plaintiff.  Second, Plaintiff objects to the Magistrate's determination that Plaintiff could not assert a retaliation claim because he did not exhaust his administrative remedies.  Third, Plaintiff objects to the Magistrate's conclusion that even if Plaintiff had a retaliation claim, he has not shown a *prima facie* case because there is no evidence of causality between Plaintiff's engaging in protected activity and his termination.

1.    *Prima Facie Case of Discrimination*

In a disparate treatment action, the plaintiff carries the burden of demonstrating that the defendant has unlawfully discriminated against him.  The framework established in <u>McDonnell Douglas Corp. v. Green</u> sets forth the burdens of proof necessary for a discrimination claim under Title VII:  1) plaintiff has the burden of proving a *prima facie* case of discrimination; 2) if plaintiff succeeds in proving the *prima facie* case, the burden shifts to defendant to articulate some legitimate, non-discriminatory reason for the action taken against the employee; and 3) if the defendant succeeds, the plaintiff must have an opportunity to prove that the legitimate reason offered by the defendant was a pretext for discrimination.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973).

Plaintiff may establish a *prima facie* case of national origin discrimination by showing that: 1) he is a member of a protected class; 2) he was subject to an adverse employment action; 3) he was qualified for the position held; 4) and he was replaced by, or treated less favorably than, someone similarly situated outside of his protected class.  Wilson v. B/E Aerospace, Inc. 376 F.3d 1079, 1087 (11th Cir. 2004); Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003).  The Magistrate Judge held that Plaintiff is unable to establish a *prima facie* case of national origin discrimination because he cannot show that a similarly situated employee outside of his class was treated more favorably.

Plaintiff argues that Mr. Ricks, who is white and was employed in the same job as Plaintiff, was disciplined more times for failure to properly document patient records and patient care issues than Plaintiff and that the Magistrate Judge incorrectly found that Plaintiff's infractions were different from those of Ricks in type and severity.  The Court disagrees.

To demonstrate that another employee is similarly situated to the plaintiff, the Eleventh Circuit requires "that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges."  Maniccia v. Brown, 171

F.3d 1364, 1368-69 (11th Cir. 1999); see also Wilson, 376 F.3d at 1091 ("The plaintiff and the employee she identifies as a comparator must be similarly situated 'in all relevant respects.  The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.") (citations omitted).

The Court agrees with the Magistrate that Plaintiff and Ricks were not similarly situated.  Mr. Ricks received one "Brief Employee Reminder Note" on March 29, 2004, regarding improvement in patient care and patient education, one verbal notice for failure to give and document patient education on October 23, 2004, and one first notice and warning for failure to document patient records and education on June 6, 2005.[1]  Ricks, however, also received recognition for his improvement in those areas.  On March 23, 2005, Ricks received a letter noting his improvement in patient education and documentation and telling him that he was doing an "excellent job."

By contrast, Plaintiff's deficiencies were more severe than Ricks'.  Plaintiff received a verbal notice on February 13, 2003 for failing to deliver the ordered

---

[1]  While Ricks received two verbal notices for tardiness and one first notice and warning for tardiness, WellStar treats attendance problems separately from performance problems.  (R&R, at 24.)

therapy for four patients.  (Def. Statement of Material Facts ("Def. SMF"), at ¶ 41.)
On April 27, 2003, Plaintiff received a written warning for failure to document that
a new patient refused therapy, failure to complete a medical safety form and failure
to perform a patient assessment.  (Id. at ¶ 48.)  On October 23, 2004, Plaintiff
received a verbal warning for failure to properly document education for a patient.
On November 29, 2004, Plaintiff received a final notice counseling report due to
eight instances of incomplete notification of physicians in the computer system,
four failures to perform patient education, and numerous failures to completely
document therapies on patient charts.  The Court observes that in many instances,
these performance problems put patient health and safety in jeopardy.

Despite these warnings, Plaintiff often refused to sign his counseling forms
and disagreed that he had done anything wrong.  In December 2004, Plaintiff
complained to his superior, Mr. Droms, that his warnings and criticisms constituted
discrimination.  Droms recommended that Plaintiff attend a re-education session
designed to remedy his performance problems.  Despite the re-education session,
Plaintiff again failed to document multiple patient records, including one instance
where he signed a document indicating that a therapy was performed after a patient

left the unit, resulting in a patient being charged for a therapy that was not actually performed.  (Id. at ¶ 82.)  On January 4, 2005, Plaintiff was terminated.

Even viewing the facts in the light most favorable to Plaintiff, his performance problems and those of Mr. Ricks are not "nearly identical" such that Defendant's more favorable treatment of Ricks satisfies the fourth prong of a *prima facie* case of national origin discrimination.  In total, Ricks received three criticisms for performance deficiencies, one of which was an informal "Brief Reminder" as opposed to a formal counseling or warning.  Plaintiff, on the other hand, received five formal criticisms for his performance–four formal counselings and one final incident which led to his termination.  While Plaintiff consistently refused to accept responsibility for his mistakes and did not show improvement after more training, Ricks showed improvement in his documentation issues.

In evaluating comparators, the Eleventh Circuit requires that the quantity and quality of their misconduct be "nearly identical" to prevent courts from second-guessing employers' reasonable decisions.  Plaintiff's cumulative record regarding patient care and documentation is clearly worse than Ricks' record, and it does not support an inference of disparate treatment.  The Court agrees with the Magistrate that Plaintiff failed to identify an employee who was involved in or

accused of the same or similar conduct but received more favorable treatment from

Defendant.  Plaintiff thus failed to establish a *prima facie* case of discriminatory

termination.  Plaintiff's objection to the Magistrate Judge's ruling on this issue is

overruled.[2]

        *2.     Exhaustion of Remedies*

Plaintiff next objects to the determination that he failed to exhaust his

administrative remedies regarding his retaliation claim.  Plaintiff argues that

although his EEOC charge did not mention retaliation or any facts suggesting that

Plaintiff took any protected activity, the "evidence in the record before the EEOC

made it clear" that Plaintiff had been retaliated against.  (Pl. Obj., at 4.)  Plaintiff's

argument is unpersuasive.

Title VII requires a plaintiff to exhaust available administrative remedies by

filing a charge of unlawful discrimination with the EEOC before filing a lawsuit.

42 U.S.C. § 2000e-5(e); Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th

Cir. 2001).  "[A] plaintiff's judicial complaint is limited by the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge of

---

[2] The Court notes there is no evidence that the reasons given for Plaintiff's
discharge were pretextual.  To the contrary, the reasons for discharge appear well-
established and the kind that would likely lead to termination.

discrimination."  <u>Gregory v. Ga. Dept. of Human Res.</u>, 355 F.3d 1277, 1280 (11th Cir. 2004); <u>see also</u> <u>Sanchez v. Stand. Brands, Inc.</u>, 431 F.2d 455, 466 (5th Cir. 1970).  "The rationale for this limitation is that Congress wanted the EEOC to have an opportunity to investigate and attempt conciliation of all claims before litigation was brought."  <u>Cabiness v. YKK (USA), Inc.</u>, 859 F. Supp. 582, 586-87 (M.D. Ga. 1994) (citing <u>Sanchez</u>, 431 F.2d at 466).  "[J]udicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate."  <u>Gregory</u>, 355 F.3d at 1279-80 (internal quotations and citations omitted).

In his EEOC Charge, Plaintiff marked only the box for "national origin" discrimination and did not mark "retaliation."  (EEOC Charge, attached to Def. MSJ [24] as Ex. 15 to Pl. Dep.)  The complete contents of Plaintiff's EEOC Charge are as follows:

> On January 4, 2005, I was discharged from the position of Respiratory Therapist.  I had worked for the hospital since April 1998.  I was informed that I was being discharged allegedly due to unsatisfactory patient documentation.  I believe that I was discriminated against based on my national origin, Iranian, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Id.).  Plaintiff did not mention retaliation anywhere in his EEOC charge.  The Magistrate Judge found and this Court finds an absence in Plaintiff's EEOC charge of any factual basis that shows or suggests any action was taken against Plaintiff as a result of complaints Plaintiff made regarding his discrimination.  Furthermore, there is nothing in the report that would allow the EEOC to infer that retaliation occurred.[3]

In Hillemann v. Univ. of Central Fl., No. 04-15153, 2006 WL 122430, * 2 (11th Cir. Jan. 18, 2006), the plaintiff's complaint alleged failure to hire for three marketing positions because of race and gender discrimination and retaliation, but plaintiff's EEOC charge regarding those positions alleged only age discrimination under the ADEA.  The Court held that the EEOC could not reasonably be expected to investigate race and sex discrimination or retaliation when the charge form did not indicate that they could have contributed to the defendant's failure to hire the plaintiff.  The Court noted that it had, in Gregory, refused to bar a plaintiff's retaliation claim when the plaintiff had only alleged race and sex discrimination in

---

[3]  It is irrelevant that, in its investigation, the EEOC may have had access to records indicating that Plaintiff complained of discrimination in December 2004. The question is whether the allegations in the EEOC charge would put the EEOC on notice to investigate for retaliation.

her EEOC charge when if found "the facts in [the] plaintiff's EEOC charge indicated she was fired after complaining about race and gender discrimination, which reasonably would lead to an EEOC investigation of retaliation." Id.  The Hillemann Court held, however, that the situation before it was different from the one in Gregory.  It reasoned that unlike the plaintiff in Gregory, the Hillemann plaintiff's EEOC charge factually supported only a claim for age discrimination. The plaintiff stated he was a victim of age discrimination because the hired applicants were younger than he was.  His charge was silent about race, sex, and retaliation and stated only that the adverse action allegedly suffered was based on age.

        In this case, Plaintiff is completely silent regarding retaliation in his EEOC charge.  He did not check the box for retaliation, and he did not allege that he complained to anyone about discrimination or that he engaged in any other protected activity that could support a claim of retaliation.  An investigation into these new allegations in Plaintiff's Complaint could not reasonably be expected to grow out of Plaintiff's EEOC charge.

        This case is therefore distinguishable from Gregory, where the Court held that although the plaintiff did not check retaliation on her charge, the charge

-13-

alleged facts that reasonably comprised a claim for retaliation and that
investigators presumably considered issues relating to retaliation when
investigating the plaintiff's claims.  Here, Plaintiff does not even suggest that he
suffered retaliation in his EEOC charge.  Plaintiff's retaliation claim in his
Complaint does not "amplify, clarify, or more clearly focus the allegations in the
EEOC charge," but instead constitutes a new allegation of discrimination.  Plaintiff
therefore did not exhaust his administrative remedies regarding his claim for
retaliation, and this claim should be dismissed.  Plaintiff's objection to this finding
by the Magistrate is overruled.[4]

---

[4]  Because the Court finds that Plaintiff cannot bring a retaliation claim
because he failed to exhaust administrative remedies, it is unnecessary to consider
Plaintiff's third objection to the Magistrate's conclusion that Plaintiff did not
establish a *prima facie* case of retaliation.  In any event, the Court agrees with the
Magistrate that Plaintiff did not establish a *prima facie* case because he failed to
show a causal connection between the protected activity and his termination.  To
establish a *prima facie* case of retaliation, Plaintiff must demonstrate that: 1) he
engaged in statutorily protected activity; 2) he suffered an adverse employment
action; and 3) the protected activity was causally related to the adverse
employment action.  Gregory, 355 F.3d at 1279.  To establish a causal connection,
Plaintiff "need only show that the protected activity and the adverse action were
not wholly unrelated."  Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799
(11th Cir. 2000).  The Eleventh Circuit has held that a plaintiff satisfies the third
element if he shows that Defendant knew of the protected activity and "that there
was a close temporal proximity between this awareness and the adverse action."
Higdon v. Jackson, 393 F.3d 1211, 1220-21 (11th Cir. 2004).  "[T]emporal
proximity, standing alone, may not be sufficient to establish the causal link."

III.   **CONCLUSION**

For the reasons stated above,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** the Magistrate

Judge's Report and Recommendation [41] and, Defendant's Motion for Summary

Judgment is **GRANTED**.

**SO ORDERED** this 26th day of February, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

_____

Spence v. Panasonic Copier Co., 46 F. Supp. 2d 1340, 1348 (N.D. Ga. 1999).
"[A]ny inference of retaliatory intent otherwise created by a short lapse of time can
be dispelled when intervening factors are established." Wu v. Southeast-Atlantic
Bev. Corp., 321 F. Supp. 2d 1317, 1337 (N.D. Ga. 2004); see also Spence, 46 F.
Supp.2d at 1348.  Moreover, Plaintiff has not shown a causal connection where, as
in this case, Defendant counseled Plaintiff for his deficiencies both before and after
plaintiff took any protected activity.  See Pipkins v. City of Temple Terrace, 267
F.3d 1197, 1201 (11th Cir. 2001) (holding that where continuing negative
performance evaluations had commenced prior to any protected expression and
were based on well-documented performance deficiencies, plaintiff cannot prove
the element of causation).  In this case, it is undisputed that Plaintiff's supervisor
had issued a final notice to Plaintiff advising him of continued deficiencies in his
performance prior to Plaintiff's complaint of discrimination in December 2004.
Plaintiff then complained that he had been discriminated against.  After completing
re-education, Plaintiff continued to make documentation errors, and he was
terminated 36 days after his first complaint of discrimination.